Good morning, your honors. I'm Sheridan Caldwell, pro bono counsel for plaintiff appellant Leon Myers. I'd like to reserve two minutes for rebuttal. All right, again, you're looking at your whole time. We'll try to do our best to give you a clue or a cue, but watch your time. Thank you. Appellees do not dispute that Mr. Myers has now paid the full filing fee required to pursue his appeal, but blame him for his delay in seeking reinstatement of the appeal or a refund of his fees. However, the unusual and unfair situation that Mr. Myers finds himself in, where he was determined to have three strikes and his appeal was dismissed for failure to pay his fees, yet he had to pay the entire fee anyway in incremental payments, was entirely created by appellee's delay in seeking to revoke Mr. Myers' IFP status. Mr. Myers' initial IFP petition was pending for three months, and appellees never challenged it. Instead, they waited yet another four months before filing their motion to revoke. When that motion was granted, Mr. Myers had already been making incremental payments and was faced with a non-choice. Pay the entire filing fee up front, which the court already determined he did not have the funds to do when it initially assessed him IFP status, or accept dismissal of his appeal while also continuing to pay the full filing fee. To be clear, this never should have happened and was entirely the result of appellee's failure to oppose Mr. Myers' IFP application at the outset of the case when the statute contemplates it should be decided. Courts in this circuit routinely recall mandates where prisoners make payments after the mandate has issued and should do so here, including because of the added injustice created by appellee's late revocation motion and the double penalty Mr. Myers faced as a result. I guess I'm not sure about whether recalling the mandate is the proper remedy here, and I think you just conceded that — maybe you didn't concede, but if it's determined that he doesn't qualify for IFP status because of the three-strikes rule, and you have stated he doesn't have the ability to pay, so without that status, he's not going to be able to pursue his appeal, why is recalling the mandate the right remedy for the situation that happened? I think for a couple reasons, Your Honor. I mean, first of all, as I mentioned, the  Why do you say that? I'm sorry, Your Honor? Why do you say that we routinely recall mandates in these circumstances? There are a number of decisions that are very summary, usually only two sentences. Well, sometimes we do, but most of the time we don't. So, I mean, recalling the mandate, aside from the IFP issues, recalling the mandate requires an extraordinary circumstance. So But, here, Your Honor, I think it is extraordinary, and under some of the other language of the Court's prior decision, there's good cause to reconsider the Court's procedures here because Mr. Myers did suffer a double penalty that never would have occurred outside of I get the double penalty argument. I'm just talking about the recall the mandate to reinstate the appeal. Let's take it, if you don't mind, one step at a time. Why should we recall a What's the extraordinary circumstance for that? I think the extraordinary circumstance was the misreading of the PLRA to allow the continued drawing and debiting of fees from Mr. Myers' account, which is only allowed for prisoners with IFP status. The fact that those fees were continually drawn even after his IFP status was revoked, and he no longer was someone with IFP status, that's the injustice here at this hearing. I get the argument about the refund of the fees, and that's a separate issue, but your primary remedy you're seeking is to reinstate the appeal and to recall the mandate to do that, and that's where I'm having problems seeing how this is an extraordinary case. Sure, Your Honor. If everything had been done right, then he would have simply been told, as he was at the end of it, you have 30 days to pay the fee or it'll be dismissed, and he didn't because he didn't pay for two years, so there's no injustice that if everything had been done right, he'd be in the same position, wouldn't he? No, Your Honor, because he wouldn't have had to pay the full filing fee. No, the same position with regard to the mandate. With regard to plain dismissal, yes, but here because That was my point. There was Separately, you want your money back. That's a separate issue. Well, that was an alternative remedy that I believe the Court proposed when appointing counsel. Mr. Meyer's initial request was to reinstate his appeal, so He'd be happy to get the money back, wouldn't he? Yes. Alternatively, of course, he would be happy to accept refunded fees, and to the extent Your Honors are not interested in restating the mandate, I'm happy to shift focus to that. Well, no, here's my question. I think it may be akin to what Judge Forrest was asking us. On your second point, return of the money, I'm not sure recalling the mandate's a proper remedy for that. I mean, the District Court didn't deny it. If we construed it as a writ of mandamus, what would we be mandating the District Court to do because the District Court hasn't decided anything? Is it the proper remedy, perhaps, filing a new suit in District Court to return the money? My understanding, Your Honor, is that the recall of the mandate would be the appeals court's mandate dismissing. Right, but I mean, usually we recall a mandate to correct a problem or to, and here I'm not sure recalling the mandate gives us the primary authority, it may, to order the return of the fees, to order the District Court to return the fees. So procedurally, can you help me out? Sure. Well, my understanding, and I apologize if briefing wasn't clear, I believe reinstating the mandate or refunding fees are alternative options. I don't think that the court needs to recall the mandate in order to refund Mr. Meyer's fees. The Judicial Conference of the United States has said that the court may return or refund fees by judicial determination. I think by even considering this issue today, the court could render an opinion that would require refund of fees without recalling the mandate. But there are situations where the court, and for example, in a case that actually, it was not cited in briefing, but Ward v. Bennett, that's 206 Federal Appendix 670, 9th Circuit, 2006, the court did recall the mandate. That was five months after the mandate had already issued, and then they went on to decide the merits of the issues that the prisoner had raised. So I think they're two separate issues, but if the court were to recall the mandate, it could go on to consider Mr. Meyer's appeal, which was his primary ask, but in the alternative, funds could be reinstated or funds could be refunded. And it does make sense here, if the court is so inclined to refund fees, to refund the entirety of the fee. Mr. Meyer's essentially never should have been assessed to have IFP status in the first place, so he never should have been put on that incremental payment plan that started drawing funds from his account and that was already drawing funds before dismissal and continued drawing them after dismissal. I wasn't able to confirm, or Mr. Meyer's wasn't able to find his old inmate statement reports to confirm exactly how much of the fee he paid before dismissal, but the inmate statement report that he submitted with his motion to reinstate shows that he paid at least half the fee, or I believe a little over half, $265 in the final months before he filed his motion to reinstate, which he did do in a very timely manner as soon as he had paid the full filing fee. So can I ask you some questions about, I'm sort of, Judge Thomas got me thinking about something. So what is our, we set aside the mandate issue and we just try to figure out, do we have the power, as this case sits procedurally, to return the money? We don't have, like the appeal is dead, right? We've said you didn't even have the ability to bring this because the three strikes rule applies. And if I look at the statute, it says that in no event shall a prisoner bring a civil action when the three strikes rule applies. So I'm curious, what is your position in terms of whose job is it to figure that out? Because it seems to me that sometimes an inmate will know that the three strikes rule applies to them, but not always. And I think here that determination had not been made at the district court, am I right about that? Correct. Okay. So we're here at the Ninth Circuit, he files the appeal, turns out that the three strikes rule applies. He may or may not have known that when he filed his appeal. Whose job is it at the moment that he presents his appeal to the Ninth Circuit to figure out does this bar apply? I think that the Ninth Circuit's decision in Andrews v. King, which was cited in briefing, is helpful on that point. It specifically places the burden of establishing that a prisoner has three strikes on the opposing party. So that decision says that it's essentially never for the prisoner to know whether or not they have three strikes. The court said, quote, such a requirement would be difficult if not impossible to meet or to expect a prisoner to know. And most prisoners, the court also said, would not be able to determine whether they've accumulated any strikes, much less determine whether they have three strikes. So here the burden was on opposing counsel to raise that issue and for that issue to be decided at the outset of the case before Mr. Myers was placed on either, you know, the payment plan track or the mandated you have to pay the full filing fee track. So what, if we accept that as correct, what is our, what is the basis of our authority given the status of this case to get the money back to your client? My understanding, and I was not able to find case law about this, but as cited in briefing, the Judicial Conference of the United States does specifically say that by judicial determination courts can issue refunds. But is that our determination or is that the district court's determination? I think that it can and should be this court's determination, Your Honor, because this court is the court that issued the, both the initial inform-a-papyrus determination that placed Mr. Myers on the payment plan under 1915b and also the order revoking his status, which ultimately, you know, affected dismissal of the case. So to, I think, taking a step back and reconsidering whether both of those determinations were a proper reading of the PLRA is a determination for this court and could certainly and should lead to refund of fees in this situation. Do you want to reserve your time for rebuttal? Sure.  Thank you, Your Honor. Good morning, Your Honors, and may it please the court. Nicole Whelan on behalf of the State Defendants. Congress has deemed it proper to require inmates to pay filing fees. After the PLRA, all inmates are required to pay the filing fees at the notice of appeal. Could you speak up, ma'am? Yes, except for IFP inmates who must ultimately pay but may do so over time. Congress expressly denied the benefit of proceeding while paying in installments to most three-strikes litigants whose pattern of meritless filings means that they have to fully pay at the notice of appeal. So can I cut to the chase here a little bit? Why does the government not want to just let this guy have his money back when he doesn't have a proper basis for appeal? And that seems pretty clear to everybody at this point. We don't think that Mr. Myers is entitled to a refund because collection was entirely proper under the way that the statutory scheme works. The IFP statute, 1915, carves out a group of inmates who may pay over time, but it doesn't remove the assessment of the filing fee. That happens for the privilege of initiating the appeal. You collect over time to pay for the fee for your appeal, and you can't appeal. Not only you can't appeal by the statute, it's been determined by the court that you can't appeal. Yes, Your Honor. Why are you paying for something you can't do? Because there's two separate sort of points here. The first is the notice of appeal, which is where the assessment happens. And then the timeliness of payment is under this court's rules, and you have to comply with both. So Mr. Myers' appeal is dismissed because he didn't timely comply with the court's rules. And that's... I mean, I come back to the statute that I quoted to your friend across the aisle. In no event shall a prisoner bring a civil action or appeal a judgment in a civil action when the three-strikes rule applies. So from the outset, this appeal is invalid. This is different than a scenario where an inmate files an appeal, seeks informed apopry status, and then maybe it gets dismissed at a pleading stage because there's some sort of flaw in the case. Like the case gets to go forward, but it fails for some sort of legal reason other than here, you don't even get to get out of the gate. This appeal is not properly before us. So in that circumstance, I'm having a hard time understanding why it is that we would So the language of 1915g says, in no event shall a prisoner bring a civil action or appeal under this section. That's referring to the IFP statute. Of course, Mr. Myers' appeal would have gone forward if he'd timely paid the full filing fee. Of course. So the assessment had already happened. He didn't comply with the filing fees. It's still proper. It still is under this Court's availability to consider it if he had paid. And that's consistent with in Raleigh and the Sixth Circuit, as well as three other circuits that the Smith v. DC case that opposing counsel's 28J letter raised, which recognized that those three circuits have required prisoners to pay the full filing fee whenever their informed apopry status is denied. And that's the Seventh Circuit in Newland v. Hellman, the Eighth Circuit in Henderson v. Norris, and the Second Circuit in Leonard v. Lacey. All of those circuits reason that because assessment happens at the notice of appeal and dismissal happens after that point, that the obligation to pay continues, and it's perfectly appropriate to collect under 1915b1, because that language is most reasonably read to include both individuals seeking to proceed IFP and those who have been granted IFP status. I can turn to the recall of the mandate issue, of course, because... Well, let me ask you this. Who has the money right now? Do we have the money in the clerk's office, or is that at the prison? So under Federal Rule of Appellate Procedure 3E, it would be the district court that would collect the filing fees for appeal. Also, it would be the district court clerk, who would likely be the proper respondent. In trying to determine that issue, an amicus brief from the United States in front of the Supreme Court came to our attention. That's in Patent Against Harris, No. 087683. It was dealing with this question presented, and the federal government stated that it remedy was not against the official defendants, but a mandamus action against the district court clerk. If the district court clerk gets the money, whose coffer does it ultimately go into? Does it go as a filing fee for the district court, or does it just go to the Treasury and no court gets the benefit, or is it ultimately remitted to the court of appeals? My understanding of the statutory scheme is that the district court clerk ultimately pays into the Treasury. I confess I'm not sure what the relationship is. Well, eventually it's got to get paid to us because it's our filing fee. Yeah. That was what I thought. So, I mean, if we determine that it was improperly collected, why don't we have the power to say you've got to return it? We do return filing fees quite a bit under various circumstances. I'm not aware of an authorization for this specific circumstance, the judicial report that my colleague cites is specific to a lack of authorization, and of course we believe that under the correct statutory construction, that collection was authorized here. So let's assume that the account stops paying. Does the district clerk then sue to collect the money that will go nowhere for no purpose? Well, in Newland against Hellman in the Seventh Circuit, the court said that in that circumstance where the prisoner no longer authorized or did not authorize at the outset, the court could go directly to the prison and direct the prison to pay. So how do you deal with Smith? That was a case out of the D.C. Circuit. Will they return the money? Sure. So Smith construed the statute based on its reading of 1915a2, the language seeking to bring a civil action, as distinct from 1915b1, filing an appeal in form apoperis. It also considered the Court's typical practice in its view of the deterrent scheme. I think Smith is wrong for two primary reasons. First, its statutory construction is inconsistent with that of the — of its sister circuits and doesn't make sense on its face. The language files an appeal in form apoperis can easily be read to include the narrower subset of seeking to bring a civil action. And secondly, and more importantly — So you just disagree with Smith? Yes, Your Honor. We think the Court should follow the 6th, 7th, 8th, and 2nd. We should create an inter-circuit conflict. Well, Your Honor, the — if the Court disagreed with Smith, it would be joining the majority of circuits, the four circuits that disagree with Smith already. And on the recalling the mandate point, because there is no error here, there was certainly no error that rises to the extraordinary level of recalling the mandate that's preserved for grave unforeseen contingencies and issues of last resort. That's certainly not the case here. And there's — because the statutory scheme differentiates between assessment and collection, and both properly occurred here, there's no reason to refund Mr. Myers. And that's — the equitable concerns particularly don't apply in this case, where Mr. Myers had notice. He signed the PLRA authorization form at Docket 12, which states, I understand that I am required by statute to pay the full amount of the $505 docketing and filing fees for this appeal, regardless of my form apoperis status and regardless of the disposition of this appeal. He also had been a frequent litigant and had every reason to be familiar with the PLRA. And he knew the possibility of having to proceed with payment, because in the district court his motion for IFP was denied because he had more than $8,000 in his prison trust account. So there's no reason to be concerned in Mr. Myers' specific case. So I have one other question. So here he was initially granted IFP status, and then it was revoked after a challenge was raised. My understanding is, and correct me if I'm wrong about this, that when we as a court have revoked in other cases, there's also sometimes an order that goes out that says stop collecting the fee. Your Honor, I'm not aware of this court's typical practice in that instance. Are you aware that that has ever happened? I'm personally not, but I wouldn't dispute that it's happened if this court thinks it to be true. And I think that even if it has happened and even if it's been the practice of the court, the court hasn't had the opportunity to construe the statute. And we would — Would that practice be inconsistent with how you think we should construe the statute? I think that's a — it depends on the — I think how the court construes it. But I think that it wouldn't necessarily be inconsistent, because the language of 1915b1 speaks to the court shall assess in one collect the partial payment, the initial fee. So that reads as mandatory. But the question of further collection I think could depend on issues like administrability and resource constraints like the Smith v. D.C. case indicated. But does the government think then that we should at least refund all of the fee that was collected after the point that we revoked IFP status? Our position is that the collection was entirely authorized, Your Honor, so no refund is warranted and there's no basis for any refund. If Your Honors have no further questions, I'm happy to submit. Thank you for your argument. Thank you. All right, Ms. Caldwell, I think you have three minutes. Thank you, Your Honors. Three points in rebuttal. First, although opposing counsel points out that other circuits do require continued payments of filing fees if a case is dismissed for failure to prosecute or if inform-a-pauper status is denied, that is not the practice in this circuit, which I think is clear even from the early docket in this case when Mr. Myers' case was Mr. Myers initially missed the deadline to file an inform-a-pauper application. The court either would have dismissed his case for failure to pay or he would have paid the full filing fee. There never would have been a situation where the case was dismissed and he would have had to continue to pay the fee. And that's why the Smith decision, as Judge Thomas points out, is actually aligned with this circuit's precedent. As the Smith case points out, other circuits, including the Fifth Circuit and the Tenth Circuit, have a practice of when a prisoner is assessed three strikes, the court provides them the opportunity to decide whether to continue to pursue the appeal, and at that point will assess a continuing or will attach a continuing fee obligation. So actually to switch tack here and say that the Ninth Circuit is going to align itself with the Aaliyah case would actually be a departure from the way the Aaliyah case is going to work in the PLRA context and outside of the PLRA context. Second, the Judicial Conference's guidance about issuing refunds does mention only a couple of examples. I believe those are just provided as examples of reasons that a refund could be issued, but here the collection past the time that Mr. Myers was determined not to have IFP status was without authorization under the statute, under the PLRA, which only allows for implementation of an incremental payment plan if the prisoner is proceeding IFP. So when Mr. Myers' IFP status was taken away, similarly, the Court lost authority to continue debiting fees under 1915b. And also to Judge Forrest's point, the Court should have at least stopped payments at the time that it decided that Mr. Myers had three strikes under 1915g, and that was entirely within the Court's power to do, unless Your Honors have any further questions. It doesn't appear so, so thank you for your argument. Great. Thank you. I will just say that we appreciate Appellant's counsel for taking this case on pro bono. It's important that our system, even sort of small little pockets like the issue in this case, works according to the law for everyone involved. So we appreciate you giving us able counsel and having a full presentation of the issues on both sides. So thank you, counsel both, for your helpful arguments. All right, the matter of Myer v. Birdsong will be submitted.
judges: Boggs, THOMAS, FORREST